**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**HATTIESBURG DIVISION**


**SOUTHEAST SUPPLY HEADER, LLC**                                       **PLAINTIFF**


**vs.**                                                      **Civil Action No. 2:07CV280KS-MTP**

**180 ACRES IN GEORGE COUNTY,**
**MISSISSIPPI, MARK CUMBEST,**
**BRENT CUMBEST, AND UNKNOWN**
**PERSONS HAVING INTERESTS**                                          **DEFENDANTS**


**ORDER CONFIRMING PLAINTIFF'S RIGHT TO CONDEMN**
**EASEMENTS AND GRANTING A PRELIMINARY AND**
**PERMANENT INJUNCTION AUTHORIZING IMMEDIATE ENTRY**

This Cause came on for hearing on December 17, 2007, on the Motion of the Plaintiff,

Southeast Supply Header, LLC ("SESH"), for Confirmation of Condemnation of Easements and

for Preliminary and Permanent Injunction Authorizing Immediate Entry (the "Motion").  The

Court, having considered the Motion, the objections thereto by the Defendants, the evidence

presented at the hearing and arguments of Plaintiffs' and Defendants' counsel, finds that the

Motion is well taken and should be granted.

**JURISDICTION AND VENUE**

1.      SESH is a natural gas company as defined by Section 2(a) of the Natural Gas Act

(the "Act"), 15 U.S.C. § 717(a)(6).  SESH has been issued a Certificate of Public Convenience and

Necessity ("Certificate") by the Federal Energy Regulatory Commission ("FERC") to construct,

operate and maintain an interstate natural gas pipeline and all necessary appliances, appurtenances,

fixtures, equipment, and facilities (the "Pipeline").

2.      This action is governed by the section 717f(h) of the Natural Gas Act, which

provides, in pertinent part:

> When any holder of a certificate of public convenience and
> necessity cannot acquire by contract, or is unable to agree with the
> owner of property to the compensation to be paid for, the necessary
> right-of-way to construct, operate, and maintain a pipe line or pipe
> lines for the transportation of natural gas, and the necessary land or
> other property, in addition to right-of-way . . . it may acquire the
> same by the exercise of the right of eminent domain in the district
> court of the United States for the district in which such property
> may be located, or in the State Courts.

15 U.S.C. S 717f(h).

3.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because

this action arises under the laws of the United States, and under 28 U.S.C. § 1337, because this

action arises under an Act of Congress regulating interstate commerce.  Jurisdiction is also proper

in this Court pursuant to the Natural Gas Act, 15 U.S.C. § 717f(h).  Venue is proper in this Court

pursuant to 28 U.S.C. § 1391.

## CONFIRMATION OF THE PLAINTIFF'S RIGHT TO CONDEMN

4.     After the Certificate was issued, SESH filed the Verified Complaint for

Condemnation under the Act pursuant to Rule 71A of the Federal Rules of Civil Procedure,

condemning a fifty (50) foot wide permanent and perpetual right of way and easement (the

"Permanent Right of Way"), as approved and certified by FERC, and a temporary right of way

and easement for work space (the "Temporary Work Space"), as approved and certificated by

FERC, under, upon, across and through land owned by the Defendants.  The Temporary Work

Space is a space parallel and contiguous to the permanent easement and right-of-way, as described

on Exhibit A, for use by SESH and its employees, contractors or other agents during the

construction of the Pipeline.  SESH also filed the Motion, requesting the Court to enter an order

confirming that SESH has the substantive right to condemn under the Natural Gas Act.  On

October 1, 2007, this Court entered its Order (the "Consolidation Order") consolidating this and

all other condemnation actions filed by SESH arising out of the Certificate (the "SESH

Condemnation Actions"), for administrative purposes only, and set the Motion for hearing on

Monday, December 17, 2007 (the "Hearing").  SESH served on each Defendant notice of the

Consolidation Order and the December 17 Hearing in the form approved by this Court ("Notice

of Consolidation and Hearing").  The Notice of Consolidation and Hearing also notified the

Defendants of their right to object to the Consolidation Order by filing a written objection within

ten days of service.  No objections to the Consolidation have been filed.

     5.     The Court finds that the Defendants were duly and properly served with the Notice

required by Rule 71A, the Verified Complaint for Condemnation, the Notice of Consolidation and

Hearing, the Motion and the Memorandum of Authorities in support thereof.

     6.     The Court, having considered the Motion, the Defendants' objections to the

Motion, the evidence and testimony presented at the hearing and arguments of counsel, finds that

the Defendants' objections should be denied, and that the Motion should be granted.

     7.     Accordingly, the Court finds that SESH is the holder of a valid Certificate of Public

Convenience and Necessity issued by FERC, that FERC has determined that the Defendants'

Property is needed for the Pipeline, and that SESH has been unable to acquire the Defendants'

Property by agreement, and thus that SESH has satisfied all requirements of the Natural Gas Act,

15 U.S.C. § 717f(h).  The Court further finds that the interests condemned by SESH are consistent

with the authority granted it by the Certificate and within the scope of such authority, and that

SESH is authorized by the Act to exercise the power of eminent domain.  Therefore, the Court

hereby confirms SESH's right to condemnation of the easements and rights of way identified in

Exhibit A hereto.

**PRELIMINARY AND PERMANENT INJUNCTION GRANTING ACCESS**

8.      SESH also requests the Court to grant it a preliminary and permanent injunction

authorizing it to enter upon the Property to begin construction related activities on the Project.  For

injunctive relief to be proper the Court must determine that four factors exist.  There must be a

substantial likelihood that the Plaintiff will prevail on the merits; there must be a substantial threat

that irreparable harm will result if the injunction is not granted; the harm that would result to the

Plaintiff if the injunction is denied must outweigh the harm to the Defendant if the injunction is

granted; and granting the injunction will not disserve the public interest.  *Clark v. Prichard*, 812

F.2d 991 (5th Cir. 1987).

9.      Numerous other federal district courts have held that if the standard for injunctive

relief is satisfied in favor of granting the relief, pipeline companies with the authority of eminent

domain under the Natural Gas Act may be granted immediate access to property to be condemned

– prior to the trial on compensation – to begin construction of a pipeline.  *See, e.g.*, *East Tennessee*

*Natural Gas Co., v. Sage*, 361 F.3d 808, 826-828 (4th Cir.), *cert. denied*, 543 U.S. 978 (2004)

(granting immediate possession of easements where delays in construction would generate

significant unrecoverable costs and time delays in completing project); *Maritimes & Northeast*

*Pipeline, LLC v. Decoulos*, 146 Fed. Appx. 495, *2-3 (1st Cir., 2005);  *Northwest Pipeline Corp.*

*v. The 20' by 1,430' Pipeline Right-of-way*, 197 F.Supp.2d 1241, 1245 (E.D.Wash. 2002) ("[w]here

there is no dispute about the validity of [the gas company's] actual right to the easement, denying

authority to grant immediate possession would produce an absurd result"); *Guardian Pipeline,*

*L.L.C. v. 950.80 Acres of Land*, 210 F.Supp.2d 976, 979 (N.D.Ill. 2002) (immediate possession

proper when condemnation order has been entered and preliminary injunction standards have been

satisfied); *N. Border Pipeline Co. v. 64.111 Acres of Land*, 125 F.Supp.2d 299, 301 (N.D.Ill. 2000)

(same).

10.     Having considered the Motion and supporting memorandum, the Defendants' Objection, the evidence and testimony presented at the hearing and arguments of counsel, the Court finds that SESH has satisfied the four requirements established for the granting of injunctive relief.  The Court finds that SESH has been issued a valid Certificate of Public Convenience and Necessity by FERC, and that all requirements under the Natural Gas Act for SESH to exercise the right of eminent domain have been satisfied.  Thus, there is a substantial likelihood that SESH will prevail on the merits and be awarded the easements and temporary work space condemned.

11.     The Court further finds that SESH has met its burden of demonstrating a substantial likelihood that immediate and irreparable harm will result if the injunction is not granted, and if it is not able to obtain immediate entry upon the Property to begin construction.  As demonstrated by the evidence and testimony presented, there is a substantial likelihood that SESH, numerous public utility providers, and the public at large will be irreparably harmed if the Project is not in-service by June 1, 2008.  Because the construction of the Project requires detailed sequencing of numerous disciplines, which must be performed in sequence across the three Spreads, access to the property must be granted immediately to begin construction related activities in order to meet this in-service date.  Any delay in granting SESH access the Defendants' Property to begin construction activities will impede SESH's ability to provide the needed energy delivery services determined by FERC to be in the best interest of the public.  Additionally, the costs to SESH, its customers and the public will be significantly increased because of skip-around costs if immediate possession is not granted.   These increased costs are against public policy, and would be unrecoverable.

12.     On balance, the potential harm to SESH and the public at large outweighs any harm

to the Defendants by granting SESH the injunction it seeks.  Granting the injunction to permit

SESH to begin construction prior to the determination of just compensation will not cause the

Defendants to lose or compromise any right they have to just compensation under federal law.

The value of just compensation is not affected one way or the other by SESH beginning the Project

prior to the determination of compensation.  Moreover, pursuant to the Court's Order Establishing

Fund for the Deposit of Compensation to be Paid to Landowners and Procedures for Payment of

Funds (the "Fund Order"), SESH has paid into the Court's registry an amount equal to its

estimation of just compensation to be paid.  Upon entry of the instant Order granting SESH's

request for preliminary and permanent injunction, the Defendants shall have the right to withdraw

those funds subject to the terms of the Fund Order, without waiving any right to argue at trial that

just compensation should be higher.

13.      Finally, it is within FERC's authority to determine whether a proposed Pipeline

furthers the public interest.  FERC's issuance of the Certificate is evidence that it has so

determined, and this Court may not contradict FERC's determination in that regard.  Additionally,

the Court finds that the grant of injunctive relief to permit SESH to begin construction of the

Project prior to the determination of just compensation furthers the public interest in that it will

aid in ensuring that the FERC-approved Project will not be delayed.

14.      Accordingly, for the foregoing reasons, the Court finds that SESH's request for a

preliminary and permanent injunction is well taken and should be granted.

**IT IS, THEREFORE, ORDERED**

A.      That pursuant to the Natural Gas Act, as the holder of a valid Certificate of Public

Convenience and Necessity issued by FERC on September 20, 2007, SESH has the substantive

right to condemn property rights needed for the Project;

B.       That SESH shall be awarded a preliminary and permanent injunction permitting it an immediate right of entry upon the Permanent Right of Way as approved and certificated by FERC, and the Temporary Work Space as approved and certificated by FERC, both of which are identified in "Exhibit A" to this Order, under, upon, across and through land owned by the Defendants, which is described in "Exhibit B" to this Order.

C.       Except as otherwise provided herein, SESH may immediately begin pre-construction and construction related activities for the purpose of constructing the Pipeline at the location approved and certificated by FERC and consistent with the centerline calls identified on Exhibit A, in a manner consistent with the FERC Certificate and FERC regulations, which pre-construction and construction related activities may include, but not limited to, surveys, examinations, and tests, and constructing, laying, maintaining, operating, inspecting, altering, repairing, replacing, and reconstructing the Pipeline, and any and all necessary or useful appurtenances thereto, on said Permanent Right-of-Way (collectively "Construction Related Activities");

D.       The Temporary Work Space will expire and revert to Defendants on May 31, 2010. SESH shall have no rights in oil, gas or other minerals;

E.       SESH shall construct the Pipeline sufficiently to bear the weight of heavy trucks and/or equipment up to 90,000 pounds at the following crossing point or points across the Permanent Right of Way:  (i) at each existing road crossing the Permanent Right of Way and (ii) at such other locations reasonably designated by the Defendants on or before ten days after SESH mails notice to Defendants whose whereabouts are known to SESH that it has completed its survey and flagging of the right of way, by marking the same on the plat map in the form attached as Exhibit A, with the total number of crossing points not to exceed one for every longitudinal 1,320

feet of the Permanent Right of Way on the Defendants' property;

F.      SESH's right of ingress and egress shall be limited to the Permanent Right of Way and, during the term thereof, the Temporary Work Space;

G.      Defendants' shall retain the right to cultivate, erect fences on or otherwise make use of the lands including roadways across the Permanent Right of Way for purposes and in a manner which will not interfere with the construction activities of SESH or the operations, maintenance or relevant safety related regulations consistent with the enjoyment or use of the rights granted to SESH but Defendants shall not construct any houses buildings, ponds, structures or any obstructions on or over the Permanent Right of Way, and any fences erected shall not impair SESH's full and complete access to the Permanent Right of Way or Temporary Work Space during the construction of the Pipeline, and following the completion of construction, shall include a twelve (12) foot wide gate with access provided to SESH.  SESH shall have the right, from time to time, to clear and remove from the Permanent Right of Way all trees, undergrowth and other natural or manmade obstructions which may injure or endanger the Pipeline or interfere with SESH's access to, use of, or monitoring of the Permanent Right-of-Way and Temporary Work Space or the free and full right of ingress and egress within and along the same;

H.      Upon the entry of this Order, Defendants shall be entitled to draw from the funds deposited by SESH with the Clerk of the Court the amount of estimated just compensation deposited by SESH related to the Defendants' Property, provided that the Defendants satisfy all conditions of the Fund Order.  Furthermore, Defendants shall be entitled to interest calculated pursuant to 28 U.S.C. § 1961 from and after the date of entry of this Order on the difference between the principal amount deposited with the Court by SESH and the amount of just compensation determined by the Court, if such determination of just compensation to be paid

exceeds the amount deposited by SESH;

I.      Plaintiff shall not begin clearing or otherwise removing timber, if any, from the

Permanent Right of Way and/or Temporary Work Space until January 17, 2008, to permit

Defendant to obtain an evaluation of the timber to be removed; and

J.      SESH shall post a surety or cash bond in the total amount of $250,000, which bond

shall stand as surety for the payment of just compensation over and above the amount deposited

with the Clerk of the Court, if any, for all SESH Condemnation Actions (as that term is defined

in the Consolidation Order).


        SO ORDERED this the 9th day of January, 2008.



                                /S/ Keith Starrett
                                 KEITH STARRETT
                                 UNITED STATES DISTRICT COURT JUDGE



Agreed as to Form:


/S/ James A. McCullough, II
James A. McCullough, II
Attorney for Plaintiff


/S/ K.C. Hightower
K.C. Hightower
Attorney for Defendants

George County, MS
T3S, R5W, Section 35
Page 1 of 3



| Drawing Legend | Southeast Supply Header, LLC | Centerline and GPS Information |
|---|---|---|

Property Of
Mark Cumbest, et al
Located In T3S, R5W, Section 35

| | | |
|---|---|---|
| PROPOSED PIPELINE LOCATION | TRACT NUMBER | |
| WORKSPACE BOUNDARY | AFFECTED TRACT BOUNDARY | |
| PERMANENT RIGHT OF WAY | O  GPS SURVEYED POINT | |

| | |
|---|---|
| Date Produced: September 20, 2007 | Pipeline Length (Feet): 3045 |
| Scale: 1" = 800' | Permanent ROW Acreage: 3.47 |
| ROW File Name: GO 147 | Temporary Workspace Acreage: 1.12 |
| Drawing Name: GO 147.jpg | Total ROW Acreage: 4.59 |
| Drawn By: GEC | Checked By: JBD |

**Centerline and GPS Information**

Point of Commencement:
30° 44' 20.74" N, 88° 27' 43.74" W

Point of Entry:  From POC proceed N 2° 40' 30.36" W 1480 feet to 30° 44' 35.39" N, 88° 27' 43.86" W, being the Point of Entry.

Point of Exit:  From POC proceed N 87° 19' 43.91" E 2575 feet to 30° 44' 20.93" N, 88° 27' 14.23" W, being the Point of Exit.

Note: The permanent easement always extends 25 feet on either side of the pipeline, perpendicular to the pipeline. Angles for temporary workspace adjustments are right angles unless otherwise indicated. Actual dimensions of temporary workspace are as depicted on the plat.

Note: Actual location of easement is determined by the pipeline as installed.  Centerline is based on GPS data.

See Exhibit 1 attached hereto for Centerline Calls.

Note:  GPS data was taken using UTM Nad 83 datum, units of feet, Zone 15 projection West of the Lawrence/Jefferson Davis County Line and Zone 16 projection East of said County Line.

George County, MS
T3S, R5W, Section 35
Page 2 of 3



| Drawing Legend | Southeast Supply Header, LLC | Centerline and GPS Information |
|---|---|---|

| | |
|---|---|
| | Property Of |
| | Mark Cumbest, et al |
| | Located In T3S, R5W, Section 35 |

|  |  |  |  |
|---|---|---|---|
| ——— | PROPOSED PIPELINE LOCATION | ⬭ | TRACT NUMBER |
| –··–··– | WORKSPACE BOUNDARY | ▬▬ | AFFECTED TRACT BOUNDARY |
| – – – | PERMANENT RIGHT OF WAY | O | GPS SURVEYED POINT |

| | |
|---|---|
| Date Produced: September 20, 2007 | Pipeline Length (Feet): 3045 |
| Scale: 1" = 300' | Permanent ROW Acreage: 3.47 |
| ROW File Name: GO 147 | Temporary Workspace Acreage: 1.12 |
| Drawing Name: GO 147.jpg | Total ROW Acreage: 4.59 |
| Drawn By: GEC | Checked By: JBD |

Centerline and GPS Information

Point of Commencement:
30° 44' 20.74" N, 88° 27' 43.74" W

Point of Entry: From POC proceed N 2° 40' 30.36" W 1480 feet to 30° 44' 35.39" N, 88° 27' 43.86" W, being the Point of Entry.

Point of Exit: From POC proceed N 87° 19' 43.91" E 2575 feet to 30° 44' 20.93" N, 88° 27' 14.23" W, being the Point of Exit.

Note: The permanent easement always extends 25 feet on either side of the pipeline, perpendicular to the pipeline. Angles for temporary workspace adjustments are right angles unless otherwise indicated. Actual dimensions of temporary workspace are as depicted on the plat.

Note: Actual location of easement is determined by the pipeline as installed. Centerline is based on GPS data.

See Exhibit 1 attached hereto for Centerline Calls.

Note: GPS data was taken using UTM Nad 83 datum, units of feet, Zone 15 projection West of the Lawrence/Jefferson Davis County Line and Zone 16 projection East of said County Line.



George County, MS
T3S, R5W, Section 35
Page 3 of 3

Point of Exit

GO148
Lipford Daniel C.
35

**Drawing Legend**

Southeast Supply Header, LLC

**Centerline and GPS Information**

Property Of
Mark Cumbest, et al
Located In T3S, R5W, Section 35

| | |
|---|---|
| ─── PROPOSED PIPELINE LOCATION | ⬭ TRACT NUMBER |
| ─ ─ ─ WORKSPACE BOUNDARY | ━━━ AFFECTED TRACT BOUNDARY |
| ─ ─ ─ PERMANENT RIGHT OF WAY | ○ GPS SURVEYED POINT |

| | |
|---|---|
| Date Produced: September 20, 2007 | Pipeline Length (Feet): 3045 |
| Scale: 1" = 300' | Permanent ROW Acreage: 3.47 |
| ROW File Name: GO 147 | Temporary Workspace Acreage: 1.12 |
| Drawing Name: GO 147.jpg | Total ROW Acreage: 4.59 |
| Drawn By: GEC | Checked By: JBD |

Point of Commencement:
30° 44' 20.74" N, 88° 27' 43.74" W

Point of Entry: From POC proceed N 2° 40' 30.36" W 1480 feet to 30° 44' 35.39" N, 88° 27' 43.86" W, being the Point of Entry.

Point of Exit: From POC proceed N 87° 19' 43.91" E 2575 feet to 30° 44' 20.93" N, 88° 27' 14.23" W, being the Point of Exit.

Note: The permanent easement always extends 25 feet on either side of the pipeline, perpendicular to the pipeline. Angles for temporary workspace adjustments are right angles unless otherwise indicated. Actual dimensions of temporary workspace are as depicted on the plat.

Note: Actual location of easement is determined by the pipeline as installed. Centerline is based on GPS data.

See Exhibit 1 attached hereto for Centerline Calls.

Note: GPS data was taken using UTM Nad 83 datum, units of feet, Zone 15 projection West of the Lawrence/Jefferson Davis County Line and Zone 16 projection East of said County Line.

WORKSPACE BOUNDARY
PERMANENT RIGHT OF WAY 10'
25'
25'
PROPOSED PIPELINE LOCATION
40'
100'
Typical

𝒩

Exhibit 1
GO 147 Centerline Calls

From Point of Entry proceed S 67° 06' 02.03" E 2631 feet.  Then S 57° 29' 21.22" E 82 feet.  Then S 46° 51' 20.91" E 64 feet.  Then S 35° 49' 56.03" E 64 feet.  Then S 25° 11' 55.72" E 82 feet.  Then S 15° 35' 14.91" E 122 feet to the Point of Exit.

TRACT GO 147

The following described property situated in George County, Mississippi:

The South Half of the Northeast Quarter of the Northeast Quarter of Section 34, and the West Half of the Northwest Quarter and the North Half of the Southwest Quarter of Section 35, all in Township 3 South, Range 5 West, being 180 acres, more or less.

**EXHIBIT B**